We are now in 16-4159, Owner-Operator and Credit Drivers Association v. U.S. Dept. of Transportation Mr. Cullen Good morning and may it please the court. My name is Paul D. Cullen Jr. and I represent the petitioners in this matter. Scott Mitchell and the owner, who is a small business trucker, and the Owner-Operator Independent Drivers Association based out of Grain Valley, Missouri with 160,000 small business trucker members from around the country. Petitioners challenge two parts of a final rule related to the medical certification of truck drivers under the rules of the Federal Motor Carrier Safety Administration. The first is FMCSA's action to elevate its so-called strictly advisory guidelines from the bottom of the medical exam report to a stand-alone section of the Code of Federal Regulations, Appendix A of 49 CFR Part 391, without even proposing this action for notice and comment rulemaking. Our second argument is that with regard to that rule and the expansion of the beginning of the medical exam, the expansion of the health history section of the medical review form, in neither instance did the court make a record or provide discussion or rationale why any of those personal medical areas related to driver health and safety or what decisions doctors should make in consideration of those issues. What tests should it give the drivers and how much do those tests cost? An analysis that should be made available to the public for notice and comment rulemaking and specifically under the Motor Carrier Act, 49 U.S.C. 31136C, they are required to do a cost-benefit analysis of such motor carrier safety rules. The first issue presents the same question described by this circuit in the Iowa League of Cities v. EPA case. When do agencies layer upon layer of guidance documents and interpretive memoranda ossify to rule-like rigidity? Is your argument that this sort of evolved into a solid regulation that's mandatory or is your argument more that the shifting of these advisory guidance statements to a freestanding appendix is the key step that made it legislative regulation? It's the first that you describe, that it evolved from the beginning in these tyranny of small decisions into a rule. And the second problem that you describe are the results of when the agency acts without the transparency and accountability of a rulemaking procedure. It makes all of these changes and decisions without notice and comment and accountability. So it's one thing to say it's evolved. It's another thing just to walk me through exactly what it is that the agency has done in what you're describing, for lack of a better phrase, little mini steps to ultimately end up with this legislative regulation. Name for me what those little steps are that you're saying have resulted in an improper rulemaking. I'd be glad to, and bear with me. There are about eight or ten of those. Give me your most important ones or the most significant. When the medical examination review form was created by a rulemaking in the year 2000, it was actually proposed in 1998. And in that proposal, they had a section on respiratory conditions. In response to that notice of proposed rulemaking, the Parents Against Tired Truckers brought up the example of sleep apnea and said there should be a test mandated here for sleep apnea. The agency rejected that, but in the final rule, it added the words sleep apnea to these guidelines at the end of the comment without having proposed it or discussed why it was there and what should happen. Was it considered a respiratory disorder? Was it listed in one of those? Yes, the agency considered it such. Although we would argue that the other respiratory disorders listed in the proposed rule were more of something that would debilitate the driver other than sleepiness through at the time of their operation of a truck. In October in 2005, and at that time, it may very well have been guidance or an interpretation since it was tacked on at the end of a form. Yeah, but it was published in the register and adopted as a rule. What do you think? I know it says advisory criteria at the top. Right. Do you really think it was just advisory? That is what the agency's argument is. At the time, there was no supervision of medical examiners. They self-certified, they used these forms, but the only form that a driver needed was the signature at the bottom saying that they had gone through the procedure. In August 2005, Congress required Were some regulated by states at that time? No, they're regulated by the federal government. No, but go slowly. If you were a medical examiner back before the federal government did it, you could be licensed by a state and be under their regulatory guidance, right? If you were a doctor filling this out or somebody that was, you understand, state licensing. Yes, yes. There was no state-specific guidance as to truck drivers. I understand. But they might have been professionals governed by state licenses, right, or not? Correct. Tell me if I'm wrong. They may have been, yes. This can just be somebody walking around with a clipboard. No, they may have been. The Feds had a rule that said this is who you have to be, but it was the person who decided for themselves that they fit into that procedure. Okay, go ahead. In August 2005, Congress decided that more supervision was necessary over medical examiners, and it required the FMCSA to establish a registry of medical examiners and provide training and qualify them and remove from the registry the name of any medical examiner that fails to meet the qualifications of the secretary. In 2008, December 1st, FMCSA proposed the rules to implement that, and they stated that on the section dealing with medical examiner training that it would base the core curriculum specifications on the current regulations and guidelines for conducting medical examinations. In April 2012, the rule was finalized. In January of 2015, FMCSA puts out a bulletin to medical examiners and training organizations regarding obstructive sleep apnea. It's in our appendix at pages 102 to 105 that describes that under the rules, medical examiners are intended to examine drivers of sleep apnea as part of the medical exam process and disqualify drivers who the examiner believes are so severely impacted that it's likely to interfere with the driver's ability to operate safely. This document was not published in any regulatory setting, published on the FMCSA's website, but it's referenced in the March 10, 2016 Sleep Apnea Notice of Proposed Rulemaking and in this recent August withdrawal of that rulemaking, saying that it was going to go forward and make changes to the bulletin and instructions to medical examiners. In May 10, 2013, the agency proposed the rule at issue here, and in April 2015, FMCSA finalized the expansion of the health history to include references to sleep apnea and did the opposite of what it said it would do with the guidelines at the end of the review form. It proposed to eliminate them from the review form and instead it elevated them to a separate section of the Code of Federal Regulations. And by this time, and then after the commencement of this proceeding, the agency, in response to a congressional mandate, initiated a rulemaking on sleep apnea, but then withdrew it this past August, puzzlingly, I would submit, stating that medical certification determinations of drivers of obstructive sleep apnea are made by the examiners based on the examiners' medical judgment rather than a federal regulation or requirement. And I'm quoting there. They're saying that the medical examiner can disqualify a driver, but not based on a rule. The agency, along this path, has done exactly what the Eighth Circuit identified in the Iowa League of Cities. Can I ask a question about the progression of the steps here? The movement of the advisory guidance, and you've described it as being elevated to the Appendix A in the Federal Register. What is different substantively about the advisory guidance and the Appendix A, if any? The substance has not changed. It's the agency's activities outside of the scope of a rulemaking to impose upon medical examiners training in sleep apnea, instructing them through bulletins not published here on how they should look at sleep apnea, but use your judgment. Since you're into your rebuttal, I'm dying to ask you, and maybe this summarizes it. I see the same words in the 2000 advisory guidance as are in this 2015 regulation. That's correct. Under respiratory dysfunction. Same words, right? That's correct. Thank you. And it's because the agency has operated outside the rulemaking proceeding. And what is the problem with this? And that was my hint you're into your rebuttal, but you're free to take it or not. Go ahead. I will take part of it right now. It's a hint. Go ahead. What is the problem with this? Without a rulemaking, we have described, the OIDA members have described, the result is that truck drivers face unpredictable and expensive and unreliable medical examinations regarding sleep apnea. There's no concrete standard issued by the agency. There are these bulletins and conferences and there's training and use your own judgment. And these decisions place drivers, disqualify them from driving a truck. They are being used to deny them medical qualification. And the agency recognizes that this is a problem. In its proposed recommendations on sleep apnea from 77 Federal Register 23794, it says the motor carrier community and medical examiners have requested that FMCSA improve the existing advisory criteria and provide more uniform regulatory guidance on obstructive sleep apnea. In FMCSA's advance notice of proposed rulemaking for the sleep apnea rule from March 10, 2016, FMCSA acknowledged that the application of the current sleep apnea criteria is inconsistent depending on the medical expertise of the examiner. And they called for new standards from its medical review board, its body that it's using outside the transparent and accountable rulemaking process to change the shifts and shift. Is this really a notice, a fair notice problem, a procedural kind of fair notice? That is an important function of the rulemaking process so that the truck drivers know what kind of tests will be expected of them, what they will cost. The medical examiners know what standard they are to use. And for the public safety, we know that there is a particular standard that's applied to all truck drivers without such a standard that would come from a rulemaking. The reason I ask the question, in your brief you say you want the court to grant the petition for review and vacate the final rule because the respondents failed to follow the rulemaking requirements. That's correct. Of the APA, the Motor Carrier Act, and public law. That's right. So if you win and the court grants this relief, are you any better off? Aren't you under the same requirements? We are better off because the court will have declared that these are not rules and they may not be used to disqualify a driver and medical examiners are not required to follow such guidelines. Guidelines are things that do not have a legal impact. These legal principles apply to all of the guidelines, although it's especially true of the sleep apnea because of the congressional mandate that they proceed by rulemaking and because of all the problems that have come up in the actual experiences of our clients' members. Thank you for your argument. Ms. Sonny. May it please the court. Before I address any of the issues brought up by opposing counsel, I have one important point to make, and it's important because it potentially disposes of this entire petition for review. That is that the petitioners argued, particularly in their opening brief, that they did not get notice and comment, an opportunity to comment on the driver's health history and the relocation of that advisory guidance. And the record shows that they did. So in the notice of proposed rulemaking, the agency published the new medical form. It had all of the proposed additions to the driver's health history. Different individuals commented, including the petitioners. The agency responded to those comments. The petitioners filed a petition for reconsideration. The agency responded to that and denied the petition. With regard to the advisory guidance,  from its previous position at the end of the old form, and it was going to relocate it, along with several other things that had been in the form, to a separate advisory agency guidance document. That's all in the notice of proposed rulemaking. The petitioners did not respond to that. They did not file any comments on that, but the American Truckers Association did. It objected to several parts of that, and it filed comments, and the agency responded to those comments. And in the final rule, it said, OK, we are therefore going to put this agency guidance without substantive change, meaning there's no changes to the text. We're going to put it in Appendix A, 249 CFR Part 391. And that wasn't simply chosen randomly. Part 391 are the physical qualifications. Those are the regulations properly enacted by the agency. No one's challenging them here. And those are the regulations that the guidance interprets. But you didn't do a new comment period, right, on responding to the ATA, right? We didn't, Your Honor, because as the courts, particularly the D.C. Circuit, have pointed out, this leads to an absurd situation. If you have to keep issuing a new notice of proposed rulemaking every time the agency gets comments and decides to respond to those comments by making a change and accommodation, you get stuck in this endless and absurd loop of notice and comment rulemaking. Unless it's a new rule, huh? There has to be a new rule exception, huh? Right. But what we said in our brief, in which the petitioners did not respond to in their reply brief, was that where this guidance ended up was a logical outgrowth of what the agency proposed. They said, we're going to put it in a guidance document. And at the end, in the final rule, they put it in a guidance document. Talk to us in statutory terms, because logical results aren't in statutes, I bet. So tell me, in terms of the APA and in terms of the review here, what is the term you would use for what the agency did? No, it's the Logical Outgrowth Doctrine, Your Honor. Okay, good. Yeah, that is exactly what it's called. Is that in statute? I beg your pardon? Is that in the statute? I've never seen it in the APA statute. No. Oh, shoot. Probably mostly developed in the D.C. Circuit. Okay, great. But that is, I think this, for instance, Now, tell me where it has a statutory home, then. Well, the question is, where the statutory home? Yeah. It's a question of what is. Like a standard review of what's going on? Okay, so. We're kind of basic out here. We're not like the D.C. Circuit. We don't have these D.C. Circuit doctrines that tell us things. We try to read statutes. So the question is, is it fair notice? Which I think one of the judges pointed out. It's a matter of, did it give fair notice? And I think the way that courts have talked about it is, is it reasonably foreseeable? And, in fact, it goes back to the Supreme Court. There's a Supreme Court case on this. I think it's called Long Island Care at Home. It talks about the logical outgrowth doctrine. Was it reasonably foreseeable what the agency ended up doing? Could you see it from the beginning? Was it predictable? So is it reasonably foreseeable if the agency says we're going to put this guidance in a separate agency guidance document, is it reasonable that where it ended up, in Appendix A, to the very part of the very regulations that it interprets? Is that reasonable? Is that foreseeable? And our answer is yes. In fact, that's an obvious place to put it. If you were referring to the regulations, for instance, you would naturally say, oh, there, right following the regulations, is the appendix. It's the agency's guidance. And that's where it should be. So our overarching argument is, okay, they got notice and comment on the form and the driver's health history. They got it on the advisory guidance. They didn't, in their petition for reconsideration afterwards, once they knew where the guidance was, they didn't then in their petition for reconsideration say, you shouldn't have done that. You shouldn't have put it there. That wasn't fair. It was wrong for these reasons. They didn't mention the guidance at all in their petition for reconsideration. So they had their chance. They had their notice and comment. That also brings me to the public law 11345 argument. All that that law says is that if the agency, if the secretary is going to adopt a screening or testing or treatment requirement for sleep disorders, sleep disorders include sleep apnea, then you have to go through notice and comment rulemaking. Well, we take issue with the notion that this is a test or screening or treatment requirement. But even if we assume that that is the case, they just went through notice and comment rulemaking. So there is no problem with public law 11345 here. What about the argument that it is harder for the drivers to know what the tests are going to be? It's now required to use the medical examination report form, correct? That was part of the rulemaking. The form is required now, yes. And how do you respond to that concern? Your Honor, my response to that is that actually, despite what petitioners say, nothing substantive changed here. So before this rule was adopted, this medical examiner's certification integration rule, before it was adopted, the regulatory standard was the same. So the medical examiners had to collect the same type of information, they had to ask drivers the same types of questions, they had to get at that regulatory standard, they had to reach a conclusion, they had to transmit it to the agency, all the same. The advisory guidance didn't change. It's exactly the same. The form, which was optional before, but again, it listed sleep disorders on the form, and it still does. The advisory guidance had a reference to sleep apnea. It still does. So all of that was the same. So when they say, well, now there's potentially subject to more tests, the answer is no, because the regulatory standard was always that a person is physically qualified to operate a commercial motor vehicle if they have no established medical history or clinical diagnosis of a respiratory dysfunction. And not just any kind of respiratory dysfunction, it's of a particular level of severity. So the regulation says that it's likely to interfere with their ability to operate a commercial motor vehicle safely. That's the standard. It's been the standard since 1970. And the one question that was added to this driver's health history, which says, have you had a sleep test, is simply getting at that question of, do you have an established medical history or clinical diagnosis? Now, Petitioner said something about questioning whether, if I heard correctly, whether sleep apnea falls properly within that category of respiratory dysfunction. That has been part of the guidance since 2000, and it's not something that the agency made up. That is a matter of general medical consensus. The term sleep apnea means a cessation of breathing, a pause in breathing, so that when you look at that other question that was on the medical form before, and it is now as well, it asks the driver, do you have a sleep disorder? Have you had pauses in breathing? I think it was loud snoring and daytime sleepiness. Now, these are all symptoms of sleep apnea. So there is no question in the medical community that sleep apnea is a respiratory dysfunction, that it affects your breathing. And, in fact, I think even the legislative, what limited legislative history there is to that public law, 11345, it describes sleep apnea in exactly those terms. It is a breathing-related sleep disorder. It affects your breathing while you're sleeping. Let me ask you the same question I asked counsel. If the petitioner prevails and the final rule is vacated, does the situation remain the same? Are the requirements, would they remain the same? Yes, Your Honor. Which actually goes to, you know, we did make a Now, counsel said the difference is now they're binding. There seems to be an emphasis on a compulsory or mandatory aspect of this. What's your comment about that? Well, Your Honor, the regulation was always binding. The regulation, the regulatory standard is what I just described. If you had an established clinical history or medical history or clinical diagnosis of a respiratory dysfunction, including sleep apnea, of a particular level of severity, you were not going to get a certificate. Not before and not now. That did not change. And the medical examiners have always been asking the same questions. They're trying to elicit answers from the driver that give them enough information to decide if the driver meets that standard. So that doesn't change. And if you got rid of this driver's health history, you go back then to the old driver's health history, and it still had the question about sleep disorders. So the medical examiner was going to ask those same questions because that's the regulatory standard. Now, if the petitioners are saying you get rid of the appendix, well, if you get rid of that appendix that has the guidance in it and you're going back to the old form, well, the guidance was on that form. So it's no different. It's actually a little bit puzzling to us because so little changed in here that had anything to do with sleep apnea. So it would just go back to the old form where the information on Appendix A would then be sent back to where it was originally. Yes, Your Honor. So, I mean, one could say that previous form was not mandatory. It was optional. But all the same information was there. And more importantly, for the regulatory standard, the medical examiner was always supposed to be asking those types of questions. But then he makes his decision. He makes his determination about that individual driver based on his reasonable medical judgment and expertise. Maybe I'll follow up on the previous question. Is there something that is concerning about the fact that that form is now mandatory? Well, actually, Your Honor, they didn't challenge anything about the mandatory nature of the form. It seems like that's part of the argument, that because it's mandatory now and it wasn't before. I would just come back to the same, you know, I don't want to repeat myself to the court, but the standard's the same, and it didn't matter before whether the medical examiner used his own form or the agency's form. He was always supposed to be getting that information from the driver in order to make an informed determination. You know, you can't make a determination about whether there's been, you know, an established medical history or clinical diagnosis unless you ask if you've ever had those types of tests. Has anybody ever said to you that you might have sleep apnea? These are the kinds of questions that a doctor would ask to see if there's an established medical history. That doesn't change. So I would just quickly mention we address standing in our brief. I don't know if the court had any questions about it, then I'd be happy to address them, but otherwise I would say that the petitioners did allude now and also more extensively in their reply brief that they have some kind of a more substantive challenge to the substance of the driver's health history, like more of an arbitrary and capricious argument. We did not read their opening brief that way. We thought this was a purely procedural challenge. It was a little strange to us, but it is what they had also argued in their petition for reconsideration, and we thought they were being consistent. That is why we did not address it in our response brief. We considered that they had simply put a marker in, that they used the phrase arbitrary and capricious in their opening brief, but they didn't have any argument there. And of course parties cannot do that because otherwise everyone would try to avoid the word limits, and they'd put everything in their reply brief. So we did not actually get a chance to address it. I would simply highlight to the court that couching this as an arbitrary and capricious challenge is not necessarily helpful to the plaintiffs because then you have to look at, did anybody raise the kind of arguments, substantive arguments, that they are making now? And the only ones that were made, the only comments that were done in the rulemaking were they asked about why didn't the agency list specific statutory authority for each question. And I see that my time is up. Thank you for your argument. Thank you. Mr. Cullen, I saw you used your time entirely despite the hints, but let me see if anybody on our panel has questions. Do you have questions? No questions. Thank you for your briefing and argument. Case 16-4159 is submitted for decision.